

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00053-CR

| | | |
|---|---|---|
| Juan Salgado Ortega a/k/a Juan Salgado | § | From Criminal District Court No. 3 |
| | § | of Tarrant County (1245362D) |
| | § | March 21, 2013 |
| v. | § | Opinion by Justice Gardner |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Anne Gardner



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00053-CR

JUAN SALGADO ORTEGA A/K/A                                    APPELLANT
JUAN SALGADO

V.

THE STATE OF TEXAS                                                STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Juan Salgado Ortega appeals his conviction following a jury trial

for possession with intent to deliver a controlled substance.  *See* Tex. Health &

Safety Code Ann. § 481.112(a) (West 2010).  Appellant raises one issue, arguing

---

[1]*See* Tex. R. App. P. 47.4.

that the evidence is insufficient to support his conviction because the testimony of the informant was not adequately corroborated. We affirm.

## II. Trial Testimony

Miguel Mendoza testified that he worked as a confidential informant for several law enforcement agencies. He testified that he first heard of Appellant having methamphetamine connections in 2011 and that he contacted Officer Mike Bali of the Arlington Police Department, seeking approval to meet with Appellant. Mendoza subsequently met with Appellant at Appellant's place of work, a grocery store and restaurant called El Ahorro, sometime in the summer of 2011. Mendoza testified that he thereafter went with Appellant to Appellant's apartment to see the methamphetamine. Appellant made a phone call upon their arrival, after which three men arrived and showed Mendoza what he believed to be methamphetamine. Mendoza testified that Appellant wanted to do the drug deal in the apartment. Mendoza said that he left the apartment to talk with Officer Bali, leaving Appellant behind. Mendoza testified that he only had the phone number of Appellant and did not have contact information for the other men.

Mendoza testified that he then, at Officer Bali's request, called Appellant to change the location of the deal to the El Ahorro parking lot. Appellant, along with the three men, went back to El Ahorro to make the deal. Mendoza testified that, back in the El Ahorro parking lot, he notified Officer Bali that the methamphetamine was present after one of the three men told him that it was in

3

the truck. Appellant then went inside El Ahorro. Mendoza testified that he left the parking lot and called Appellant to move the deal down the block, again at Officer Bali's request. Appellant called Mendoza back and said that the three men would meet down the block. Mendoza testified that the phone call from Appellant was the last time he talked with Appellant.

On cross-examination, Mendoza testified that Appellant never said that he had the drugs but that his friends had the drugs. Mendoza testified that when one of the three men told him in the El Ahorro parking lot that the drugs were present, Appellant was standing next to Mendoza. Mendoza also testified that Appellant told him that he made a profit from this deal.

Officer Ray Morales testified that Officer Bali contacted him for assistance in conducting a traffic stop of a suspected drug dealer. Officer Morales testified that he found the described vehicle, a silver Ford F150, in the parking lot of El Ahorro and that when the vehicle left the parking lot, he and another officer stopped the vehicle. Officer Morales testified that three individuals were in the truck and that officers found drugs in the truck. On cross-examination, Officer Morales testified that Appellant was not in the truck when he stopped it, nor did Appellant own it.

Officer Mike Bali testified that he had worked with Mendoza on several occasions and believed him to be reliable and that Mendoza could accurately identify methamphetamine. Officer Bali testified that he met with Mendoza about Appellant's methamphetamine connection a few days before Mendoza was

4

scheduled to meet with Appellant. Officer Bali also testified that he met with Mendoza on the day Mendoza was going to meet Appellant and that he placed a listening device on Mendoza so that he and three other officers could hear what was going on. Officer Bali said that he followed Mendoza to El Ahorro, where Mendoza met with Appellant. Officer Bali testified that he saw Mendoza with Appellant at El Ahorro.

Officer Bali testified that after Mendoza met with Appellant at El Ahorro, Mendoza called him and said that Appellant wanted them to go to a different location. Officer Bali told Mendoza to go with Appellant. Officer Bali testified that he followed Mendoza and Appellant to an apartment complex and that another detective was in place to see Mendoza go into an apartment with Appellant. Officer Bali testified that Mendoza left the apartment and called him, telling him that three other men had shown Mendoza a kilogram of methamphetamine and that the men and Appellant wanted to make the deal at the apartment complex. Officer Bali testified that he directed Mendoza to tell Appellant and the men to make the deal at El Ahorro.

Officer Bali testified that Appellant went back to El Ahorro in his blue Dodge Durango, with a silver F150 following "right behind him." Officer Bali said that he saw Mendoza, Appellant, and the three men meet in the parking lot and that Mendoza, after going to the F150, signaled that he saw the methamphetamine. Officer Bali testified that Mendoza left the parking lot and that he directed Mendoza to "call them back" and move the deal down the street.

5

Officer Bali testified that he watched as Appellant went inside El Ahorro and as the other three men drove away in the silver F150. Officers stopped the silver F150, arrested the three individuals inside the truck, and subsequently arrested Appellant inside El Ahorro. Officer Bali testified that he seized methamphetamine from the truck.[2]

On cross-examination, Officer Bali testified that the methamphetamine was at the apartment while Mendoza was there, but he did not know who brought it there. Officer Bali also testified that when the three men left the parking lot of El Ahorro to make the deal and were subsequently arrested, Appellant was not with them. He also agreed that he found no drugs in Appellant's apartment in a subsequent search. Officer Bali testified that, at the time of Appellant's arrest, Appellant did not have methamphetamine in his possession, but he later clarified that he knew that the legal meaning of possession included custody and management.

### III. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

---

[2]Sarah Skyles, a senior forensic chemist, later testified that the substance taken from the silver Ford F150 was tested and found to be methamphetamine.

307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

## IV. Discussion

In his sole issue, Appellant contends that the evidence is insufficient to support his conviction because there is insufficient evidence to corroborate Mendoza's informant testimony.

## A. Applicable Law

An individual commits an offense under health and safety code section 481.112(a) if the individual "knowingly . . . possesses with intent to deliver a controlled substance listed in Penalty Group 1." Tex. Health & Safety Code Ann. § 481.112(a).[3] Appellant does not contest the individual elements of the crime, only the sufficiency of the evidence connecting him to the commission of the crime.

Convictions under health and safety code section 481 must comply with code of criminal procedure article 38.141, which states:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

Tex. Code Crim. Proc. Ann. art. § 38.141(a), (b) (West 2005). The court of criminal appeals held in *Malone* that this language is substantially similar to the language of Article 38.14, which covers the accomplice-witness standard for corroboration.[4] *Malone v. State*, 253 S.W.3d 253, 257–58 (Tex. Crim. App.

---

[3]Penalty Group 1 includes methamphetamine. *Id.* § 481.102(6) (West 2010).

[4]"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense

8

2008); *see* Tex. Code Crim. Proc. Ann. art. § 38.14. Thus, the same standard for evaluating sufficiency of the evidence applies to both informant testimony and accomplice testimony. *Malone*, 253 S.W.3d at 258. This standard requires that, to corroborate accomplice testimony, some amount of non-accomplice evidence must tend to connect the defendant to the commission of the crime in some way. *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (holding that there must be "*some* non-accomplice evidence *tending to connect* the defendant to the offense"), *cert. denied*, 552 U.S. 1232 (2008). The non-accomplice evidence need not, however, be sufficient by itself to convict the defendant beyond a reasonable doubt. *Malone*, 253 S.W.3d at 257; *Joubert*, 235 S.W.3d at 731.

Applying this standard, the court in *Malone* "eliminate[d] the accomplice testimony from consideration and then examine[d] the remaining portions of the record to see if there [was] any evidence that tend[ed] to connect the accused with the commission of the crime." 253 S.W.3d at 257 (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). The court further held that the remaining evidence must "simply link the accused in some way to the commission of the crime." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) (quoting *Malone*, 253 S.W.3d at 257).

---

committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. § 38.14 (West 2005).

While a defendant's mere presence at the scene of the crime is insufficient to link the defendant to the commission of the crime, a defendant's presence, coupled with other suspicious circumstances, can be sufficient to tend to connect a defendant to the commission of the crime. *Malone*, 253 S.W.3d at 257 (citing *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993), and *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). Suspicious circumstances may include the defendant being in the company of the accomplice near the time of the offense. *Brown*, 672 S.W.2d at 489 (holding that the "appellant's presence with the accomplice witness shortly before the commission of the offense" is a suspicious circumstance); *LeBlue v. State*, No. 03-08-00278-CR, 2010 WL 2540490, at *4 (Tex. App.—Austin June 24, 2010, pet. ref'd) (mem. op., not designated for publication) (citing *Killough v. State*, 718 S.W.2d 708, 711 (Tex. Crim. App. 1986)). Moreover, police observations can sufficiently connect the defendant with the offense. *See Malone*, 253 S.W.3d at 258–59 (holding that the officer's enlistment of informants, following the informants to the location of the drug deal, watching the informants interact with the defendant, and then seizing drugs from the informants that they did not have before, was sufficient evidence to corroborate); *Herron v. State*, Nos. 01-04-00640-CR, 01-04-00641-CR, 2005 WL 1646043, at *5 (Tex. App.—Houston [1st Dist.] July 14, 2005, pet. ref'd) (mem. op., not designated for publication) (holding that police watching the appellant drive a separate car "in tandem" with the vehicle that contained drugs

and then stand next to the vehicles during the drug deal was sufficient corroborating evidence).

Additionally, when there are conflicting views of the evidence, appellate courts should defer to how the fact-finder viewed the evidence. *Simmons*, 282 S.W.3d at 508 (holding that "when there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder"). Thus, if a "rational fact-finder could conclude that the non-accomplice [or non-informant] evidence tends to connect [the] appellant to the offense," the appellate court should hold that the evidence is sufficient to corroborate the accomplice or informant testimony. *Id.* at 509 (internal quotations omitted).

## B. Analysis

Appellant argues that the non-informant evidence is insufficient to corroborate Mendoza's informant testimony because it does not tend to connect Appellant to the crime. We therefore set aside Mendoza's testimony to determine whether the remaining evidence tends to connect Appellant to the crime. *See Malone*, 253 S.W.3d at 257 (holding that the court must eliminate the accomplice testimony and determine if the remaining evidence tends to connect the accused with the commission of the crime). If any of this remaining evidence tends to connect Appellant to the offense, it is sufficient to corroborate Mendoza's testimony. *See Simmons*, 282 S.W.3d at 508–09 (holding that non-

11

accomplice testimony "must simply link the accused in some way to the commission of the crime"); *Joubert*, 235 S.W.3d at 731 (holding that "*some* non-accomplice evidence [must *tend*] *to connect* the defendant to the offense").

Setting aside Mendoza's testimony, the remaining evidence shows that Officer Bali had previously used Mendoza as an informant on several occasions. He saw Mendoza with Appellant at El Ahorro and followed them to an apartment complex. After Officer Bali directed Mendoza to change the location of the drug deal from the apartment to the El Ahorro parking lot, he watched as Appellant returned to El Ahorro, the silver F150 containing the drugs following "right behind." At El Ahorro, Officer Bali watched as Appellant met with Mendoza and the three men and as Appellant stood by when Mendoza signaled the drugs were present. Officer Bali directed Mendoza to move the deal to a location down the street, after which he watched as Appellant went inside El Ahorro and as the silver F150 drove toward the new location. Officers stopped the truck and seized methamphetamine.

In *Malone*, a narcotics investigator used two informants to purchase crack cocaine from Malone. 253 S.W.3d at 255. The investigator followed them to Malone's house, watching them along the way. *Id.* The investigator watched the informants interact with Malone outside of Malone's house and subsequently go inside with him. *Id.* After an hour and twenty minutes, the informants left the house, returned to the police station, and the investigator found that both informants had several "cookies" of crack. *Id.* The court of criminal appeals held

12

that the investigator's observations corroborated the informants' testimony because "[t]aken as a whole, the non-covert agent evidence shows more than mere presence. The jury could have rationally found that the corroborating evidence sufficiently tended to connect Malone to the delivery of the crack cocaine." *Id.* at 259. In *Herron*, police observed Herron at the house where the drugs were and where the drug deal was supposed to happen. 2005 WL 1646043, at *1. An undercover officer changed the location of the drug deal from the house to a gas station. *Id.* Police watched as Herron drove from the house to the gas station "in tandem" with the vehicle the drugs were in. *Id.* at *4. At the gas station, police saw Herron get out and stand next to his car as the drug deal took place, "but [he] did not pump gas or go toward the store." *Id.* The court held that the police observations, "considered in their entirety, are sufficient to tend to connect appellant with the offense committed." *Id.* at *5.

Here, the collective police observations of Appellant tend to connect him to the crime, namely his many interactions with Mendoza and his travel from one location to another each time Officer Bali directed Mendoza to change the place for the drug deal. *See Malone*, 253 S.W.3d at 259 (holding that the police observations of informants interacting with Malone, going in his house with him, and the informants having crack after leaving, taken as a whole, showed more than mere presence and, therefore, could have tended to connect Malone to the crime); *Herron*, 2005 WL 1646043, at *4–5 (holding that police observations of Herron being at the original location of the drug deal, driving in tandem with the

13

drugs to a new drug deal location, and then standing by while the drug deal took place, considered in their entirety, were sufficient to tend to connect Herron to the crime). Additionally, Appellant's presence with Mendoza throughout is itself suspicious. *See Brown*, 672 S.W.2d at 489 (holding that being in the company of the accomplice near the time of the offense is a suspicious circumstance).

Appellant argues that Officer Bali's testimony does not tend to connect him to the crime because Officer Bali does not speak Spanish, meaning that Officer Bali did not understand the conversations he heard over Mendoza's listening device. Nevertheless, Officer Bali's testimony places Appellant near the scene of the crime, in the informant's company, and traveling to a new drug deal location in tandem with the drugs. Considered together, this evidence tends to connect Appellant to the crime. *See Malone*, 253 S.W.3d at 257 (holding that presence, coupled with suspicious circumstances, can tend to connect a defendant with the crime); *Brown*, 672 S.W.2d at 489 (holding that being in the company of the accomplice near the time of the offense is a suspicious circumstance); *Herron*, 2005 WL 1646043, at *5 (holding that driving in tandem with the drugs to a new drug deal location, along with other factors, tended to connect Herron to the crime). It is therefore not outcome determinative in this case that Officer Bali could not understand the Spanish-language conversations between Appellant and Mendoza.

A rational jury could conclude that the evidence tended to connect Appellant to the commission of the crime. *See Malone,* 253 S.W.3d at 259

14

(holding that jurors can rationally find that evidence showing more than mere presence sufficiently tends to connect a defendant to the crime); *see also Simmons*, 282 S.W.3d at 508 (holding that the evidence must link the accused to the crime in some way and show that rational jurors could conclude that the evidence tends to connect the accused to the crime). While the evidence may have alternative permissible views that do not tend to connect Appellant to the offense, the jury viewed the evidence as tending to connect Appellant to the offense, and we must defer to that view. *Simmons*, 282 S.W.3d at 508 (holding that appellate courts should defer to the view of the facts chosen by the fact-finder). Applying the appropriate standard of review, we hold that the evidence is sufficient to support Appellant's conviction, and we overrule Appellant's issue. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 895, 912; *see also Malone*, 253 S.W.3d at 257; *Joubert*, 235 S.W.3d at 731.

## V. Conclusion

Having overruled Appellant's sole issue on appeal, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 21, 2013

15