02-12-053-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00053-CR

 

 









 
 
 Juan
 Salgado Ortega a/k/a Juan Salgado
  
  
  
 v.
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From Criminal District
 Court No. 3
  
 of
 Tarrant County (1245362D)
  
 March
 21, 2013
  
 Opinion
 by Justice Gardner
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS








 

 

 

 

By_________________________________

   
Justice Anne Gardner








 

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00053-CR

 

 


 
 
 Juan Salgado Ortega a/k/a Juan Salgado
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 3 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

 

Appellant
Juan Salgado Ortega appeals his conviction following a jury trial for
possession with intent to deliver a controlled substance.  See Tex.
Health & Safety Code Ann. § 481.112(a) (West 2010).  Appellant raises one issue,
arguing that the evidence is insufficient to support his conviction because the
testimony of the informant was not adequately corroborated.  We affirm.

II.  Trial
Testimony

Miguel
Mendoza testified that he worked as a confidential informant for several law
enforcement agencies.  He testified that he first heard of Appellant having
methamphetamine connections in 2011 and that he contacted Officer Mike Bali of
the Arlington Police Department, seeking approval to meet with Appellant.  Mendoza
subsequently met with Appellant at Appellant’s place of work, a grocery store
and restaurant called El Ahorro, sometime in the summer of 2011.  Mendoza
testified that he thereafter went with Appellant to Appellant’s apartment to
see the methamphetamine.  Appellant made a phone call upon their arrival, after
which three men arrived and showed Mendoza what he believed to be
methamphetamine.  Mendoza testified that Appellant wanted to do the drug deal
in the apartment.  Mendoza said that he left the apartment to talk with Officer
Bali, leaving Appellant behind.  Mendoza testified that he only had the phone
number of Appellant and did not have contact information for the other men.

Mendoza
testified that he then, at Officer Bali’s request, called Appellant to change
the location of the deal to the El Ahorro parking lot.  Appellant, along with
the three men, went back to El Ahorro to make the deal.  Mendoza testified
that, back in the El Ahorro parking lot, he notified Officer Bali that the
methamphetamine was present after one of the three men told him that it was in
the truck.  Appellant then went inside El Ahorro.  Mendoza testified that he
left the parking lot and called Appellant to move the deal down the block,
again at Officer Bali’s request.  Appellant called Mendoza back and said that
the three men would meet down the block.  Mendoza testified that the phone call
from Appellant was the last time he talked with Appellant.

On
cross-examination, Mendoza testified that Appellant never said that he had the
drugs but that his friends had the drugs.  Mendoza testified that when one of
the three men told him in the El Ahorro parking lot that the drugs were
present, Appellant was standing next to Mendoza.  Mendoza also testified that
Appellant told him that he made a profit from this deal.

Officer
Ray Morales testified that Officer Bali contacted him for assistance in
conducting a traffic stop of a suspected drug dealer.  Officer Morales
testified that he found the described vehicle, a silver Ford F150, in the
parking lot of El Ahorro and that when the vehicle left the parking lot, he and
another officer stopped the vehicle.  Officer Morales testified that three
individuals were in the truck and that officers found drugs in the truck.  On
cross-examination, Officer Morales testified that Appellant was not in the
truck when he stopped it, nor did Appellant own it.

Officer
Mike Bali testified that he had worked with Mendoza on several occasions and
believed him to be reliable and that Mendoza could accurately identify
methamphetamine.  Officer Bali testified that he met with Mendoza about
Appellant’s methamphetamine connection a few days before Mendoza was scheduled
to meet with Appellant.  Officer Bali also testified that he met with Mendoza
on the day Mendoza was going to meet Appellant and that he placed a listening
device on Mendoza so that he and three other officers could hear what was going
on.  Officer Bali said that he followed Mendoza to El Ahorro, where Mendoza met
with Appellant.  Officer Bali testified that he saw Mendoza with Appellant at
El Ahorro.

Officer
Bali testified that after Mendoza met with Appellant at El Ahorro, Mendoza
called him and said that Appellant wanted them to go to a different location.  Officer
Bali told Mendoza to go with Appellant.  Officer Bali testified that he
followed Mendoza and Appellant to an apartment complex and that another
detective was in place to see Mendoza go into an apartment with Appellant.  Officer
Bali testified that Mendoza left the apartment and called him, telling him that
three other men had shown Mendoza a kilogram of methamphetamine and that the
men and Appellant wanted to make the deal at the apartment complex.  Officer
Bali testified that he directed Mendoza to tell Appellant and the men to make the
deal at El Ahorro.

Officer
Bali testified that Appellant went back to El Ahorro in his blue Dodge Durango,
with a silver F150 following “right behind him.”  Officer Bali said that he saw
Mendoza, Appellant, and the three men meet in the parking lot and that Mendoza,
after going to the F150, signaled that he saw the methamphetamine.  Officer
Bali testified that Mendoza left the parking lot and that he directed Mendoza
to “call them back” and move the deal down the street.  Officer Bali testified
that he watched as Appellant went inside El Ahorro and as the other three men
drove away in the silver F150.  Officers stopped the silver F150, arrested the
three individuals inside the truck, and subsequently arrested Appellant inside
El Ahorro.  Officer Bali testified that he seized methamphetamine from the
truck.[2]

On
cross-examination, Officer Bali testified that the methamphetamine was at the
apartment while Mendoza was there, but he did not know who brought it there.  Officer
Bali also testified that when the three men left the parking lot of El Ahorro
to make the deal and were subsequently arrested, Appellant was not with them.  He
also agreed that he found no drugs in Appellant’s apartment in a subsequent
search.  Officer Bali testified that, at the time of Appellant’s arrest,
Appellant did not have methamphetamine in his possession, but he later
clarified that he knew that the legal meaning of possession included custody
and management.

III.
 Standard of Review

In
our due-process review of the sufficiency of the evidence to support a conviction,
we view all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v. State, 364
S.W.3d 900, 903 (Tex. Crim. App. 2012).

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Blackman v. State, 350 S.W.3d 588, 595
(Tex. Crim. App. 2011).

The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Wise, 364
S.W.3d at 903.  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Isassi v. State, 330 S.W.3d 633,
638 (Tex. Crim. App. 2010).  Instead, we determine whether the necessary
inferences are reasonable based upon the cumulative force of the evidence when
viewed in the light most favorable to the verdict.  Sorrells v. State,
343 S.W.3d 152, 155 (Tex. Crim. App. 2011).  We must presume that the
factfinder resolved any conflicting inferences in favor of the verdict and
defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Wise, 364 S.W.3d at 903.

IV.  Discussion

In
his sole issue, Appellant contends that the evidence is insufficient to support
his conviction because there is insufficient evidence to corroborate Mendoza’s
informant testimony.

A.  Applicable
Law

An
individual commits an offense under health and safety code section 481.112(a)
if the individual “knowingly . . . possesses with intent to deliver a
controlled substance listed in Penalty Group 1.”  Tex. Health & Safety Code
Ann. § 481.112(a).[3]  Appellant does not
contest the individual elements of the crime, only the sufficiency of the
evidence connecting him to the commission of the crime.

Convictions
under health and safety code section 481 must comply with code of criminal
procedure article 38.141, which states:

          (a)
A defendant may not be convicted of an offense under Chapter 481, Health and
Safety Code, on the testimony of a person who is not a licensed peace officer
or a special investigator but who is acting covertly on behalf of a law
enforcement agency or under the color of law enforcement unless the testimony
is corroborated by other evidence tending to connect the defendant with the
offense committed.

 

          (b) Corroboration is not
sufficient for the purposes of this article if the corroboration only shows the
commission of the offense.

Tex. Code Crim. Proc. Ann. art. § 38.141(a), (b) (West 2005).  The
court of criminal appeals held in Malone that this language is
substantially similar to the language of Article 38.14, which covers the
accomplice-witness standard for corroboration.[4]  Malone v. State,
253 S.W.3d 253, 257–58 (Tex. Crim. App. 2008); see Tex. Code Crim. Proc.
Ann. art. § 38.14.  Thus, the same standard for evaluating sufficiency of the
evidence applies to both informant testimony and accomplice testimony.  Malone,
253 S.W.3d at 258.  This standard requires that, to corroborate accomplice
testimony, some amount of non-accomplice evidence must tend to connect the
defendant to the commission of the crime in some way.  Joubert v. State,
235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (holding that there must be “some
non-accomplice evidence tending to connect the defendant to the
offense”), cert. denied, 552 U.S. 1232 (2008).  The non-accomplice
evidence need not, however, be sufficient by itself to convict the defendant
beyond a reasonable doubt.  Malone, 253 S.W.3d at 257; Joubert,
235 S.W.3d at 731.

Applying
this standard, the court in Malone “eliminate[d] the accomplice
testimony from consideration and then examine[d] the remaining portions of the
record to see if there [was] any evidence that tend[ed] to connect the accused
with the commission of the crime.”  253 S.W.3d at 257 (quoting Solomon v.
State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)).  The court further held
that the remaining evidence must “simply link the accused in some way to the
commission of the crime.”  Simmons v. State, 282 S.W.3d 504, 508 (Tex.
Crim. App. 2009) (quoting Malone, 253 S.W.3d at 257).

While
a defendant’s mere presence at the scene of the crime is insufficient to link
the defendant to the commission of the crime, a defendant’s presence, coupled
with other suspicious circumstances, can be sufficient to tend to connect a
defendant to the commission of the crime.  Malone, 253 S.W.3d at 257
(citing Golden v. State, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993), and
Brown v. State, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)).  Suspicious
circumstances may include the defendant being in the company of the accomplice
near the time of the offense.  Brown, 672 S.W.2d at 489 (holding that
the “appellant’s presence with the accomplice witness shortly before the
commission of the offense” is a suspicious circumstance); LeBlue v. State,
No. 03-08-00278-CR, 2010 WL 2540490, at *4 (Tex. App.—Austin June 24, 2010,
pet. ref’d) (mem. op., not designated for publication) (citing Killough v.
State, 718 S.W.2d 708, 711 (Tex. Crim. App. 1986)).  Moreover, police
observations can sufficiently connect the defendant with the offense.  See
Malone, 253 S.W.3d at 258–59 (holding that the officer’s enlistment of
informants, following the informants to the location of the drug deal, watching
the informants interact with the defendant, and then seizing drugs from the
informants that they did not have before, was sufficient evidence to
corroborate); Herron v. State, Nos. 01-04-00640-CR, 01-04-00641-CR, 2005
WL 1646043, at *5 (Tex. App.—Houston [1st Dist.] July 14, 2005, pet. ref'd)
(mem. op., not designated for publication) (holding that police watching the
appellant drive a separate car “in tandem” with the vehicle that contained
drugs and then stand next to the vehicles during the drug deal was sufficient
corroborating evidence).

Additionally,
when there are conflicting views of the evidence, appellate courts should defer
to how the fact-finder viewed the evidence.  Simmons, 282 S.W.3d at 508
(holding that “when there are two permissible views of the evidence (one
tending to connect the defendant to the offense and the other not tending to
connect the defendant to the offense), appellate courts should defer to that
view of the evidence chosen by the fact-finder”).  Thus, if a “rational
fact-finder could conclude that the non-accomplice [or non-informant] evidence
tends to connect [the] appellant to the offense,” the appellate court should
hold that the evidence is sufficient to corroborate the accomplice or informant
testimony.  Id. at 509 (internal quotations omitted).

B.  Analysis

Appellant
argues that the non-informant evidence is insufficient to corroborate Mendoza’s
informant testimony because it does not tend to connect Appellant to the crime.
 We therefore set aside Mendoza’s testimony to determine whether the remaining
evidence tends to connect Appellant to the crime.  See Malone, 253
S.W.3d at 257 (holding that the court must eliminate the accomplice testimony
and determine if the remaining evidence tends to connect the accused with the
commission of the crime).  If any of this remaining evidence tends to connect
Appellant to the offense, it is sufficient to corroborate Mendoza’s testimony. 
See Simmons, 282 S.W.3d at 508–09 (holding that non-accomplice testimony
“must simply link the accused in some way to the commission of the crime”); Joubert,
235 S.W.3d at 731 (holding that “some non-accomplice evidence [must tend]
to connect the defendant to the offense”).

Setting
aside Mendoza’s testimony, the remaining evidence shows that Officer Bali had
previously used Mendoza as an informant on several occasions.  He saw Mendoza
with Appellant at El Ahorro and followed them to an apartment complex.  After
Officer Bali directed Mendoza to change the location of the drug deal from the apartment
to the El Ahorro parking lot, he watched as Appellant returned to El Ahorro,
the silver F150 containing the drugs following “right behind.”  At El Ahorro,
Officer Bali watched as Appellant met with Mendoza and the three men and as
Appellant stood by when Mendoza signaled the drugs were present.  Officer Bali
directed Mendoza to move the deal to a location down the street, after which he
watched as Appellant went inside El Ahorro and as the silver F150 drove toward
the new location.  Officers stopped the truck and seized methamphetamine.

In Malone,
a narcotics investigator used two informants to purchase crack cocaine from
Malone.  253 S.W.3d at 255.  The investigator followed them to Malone’s house,
watching them along the way.  Id.  The investigator watched the
informants interact with Malone outside of Malone’s house and subsequently go
inside with him.  Id.  After an hour and twenty minutes, the informants
left the house, returned to the police station, and the investigator found that
both informants had several “cookies” of crack.  Id.  The court of
criminal appeals held that the investigator’s observations corroborated the
informants’ testimony because “[t]aken as a whole, the non-covert agent
evidence shows more than mere presence.  The jury could have rationally found
that the corroborating evidence sufficiently tended to connect Malone to the
delivery of the crack cocaine.”  Id. at 259.  In Herron, police
observed Herron at the house where the drugs were and where the drug deal was
supposed to happen.  2005 WL 1646043, at *1.  An undercover officer changed the
location of the drug deal from the house to a gas station.  Id.  Police
watched as Herron drove from the house to the gas station “in tandem” with the
vehicle the drugs were in.  Id. at *4.  At the gas station, police saw
Herron get out and stand next to his car as the drug deal took place, “but [he]
did not pump gas or go toward the store.”  Id.  The court held that the
police observations, “considered in their entirety, are sufficient to tend to
connect appellant with the offense committed.”  Id. at *5.

Here,
the collective police observations of Appellant tend to connect him to the
crime, namely his many interactions with Mendoza and his travel from one
location to another each time Officer Bali directed Mendoza to change the place
for the drug deal.  See Malone, 253 S.W.3d at 259 (holding that
the police observations of informants interacting with Malone, going in his
house with him, and the informants having crack after leaving, taken as a
whole, showed more than mere presence and, therefore, could have tended to
connect Malone to the crime); Herron, 2005 WL 1646043, at *4–5 (holding
that police observations of Herron being at the original location of the drug
deal, driving in tandem with the drugs to a new drug deal location, and then
standing by while the drug deal took place, considered in their entirety, were
sufficient to tend to connect Herron to the crime).  Additionally, Appellant’s
presence with Mendoza throughout is itself suspicious.  See Brown, 672
S.W.2d at 489 (holding that being in the company of the accomplice near the
time of the offense is a suspicious circumstance).

Appellant
argues that Officer Bali’s testimony does not tend to connect him to the crime
because Officer Bali does not speak Spanish, meaning that Officer Bali did not
understand the conversations he heard over Mendoza’s listening device.  Nevertheless,
Officer Bali’s testimony places Appellant near the scene of the crime, in the
informant’s company, and traveling to a new drug deal location in tandem with
the drugs.  Considered together, this evidence tends to connect Appellant to
the crime.  See Malone, 253 S.W.3d at 257 (holding that presence,
coupled with suspicious circumstances, can tend to connect a defendant with the
crime); Brown, 672 S.W.2d at 489 (holding that being in the company of
the accomplice near the time of the offense is a suspicious circumstance); Herron,
2005 WL 1646043, at *5 (holding that driving in tandem with the drugs to a new
drug deal location, along with other factors, tended to connect Herron to the
crime).  It is therefore not outcome determinative in this case that Officer
Bali could not understand the Spanish-language conversations between Appellant
and Mendoza.

A
rational jury could conclude that the evidence tended to connect Appellant to
the commission of the crime.  See Malone, 253 S.W.3d at 259 (holding
that jurors can rationally find that evidence showing more than mere presence
sufficiently tends to connect a defendant to the crime); see also Simmons,
282 S.W.3d at 508 (holding that the evidence must link the accused to the crime
in some way and show that rational jurors could conclude that the evidence
tends to connect the accused to the crime).  While the evidence may have
alternative permissible views that do not tend to connect Appellant to the
offense, the jury viewed the evidence as tending to connect Appellant to the
offense, and we must defer to that view.  Simmons, 282 S.W.3d at 508
(holding that appellate courts should defer to the view of the facts chosen by
the fact-finder).  Applying the appropriate standard of review, we hold that
the evidence is sufficient to support Appellant’s conviction, and we overrule
Appellant’s issue.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Brooks,
323 S.W.3d at 895, 912; see also Malone, 253 S.W.3d at 257; Joubert,
235 S.W.3d at 731.

V.  Conclusion

Having
overruled Appellant’s sole issue on appeal, we affirm the trial court’s
judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 21, 2013









[1]See Tex. R. App. P.
47.4.





[2]Sarah Skyles, a senior
forensic chemist, later testified that the substance taken from the silver Ford
F150 was tested and found to be methamphetamine.





[3]Penalty Group 1 includes
methamphetamine.  Id. § 481.102(6) (West 2010).





[4]“A
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.” Tex. Code Crim. Proc. Ann. art. § 38.14 (West
2005).