Death Opinion








 








IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 

 




AP-75,050




 


 ELIJAH DWAYNE JOUBERT, Appellant


 

v.


 

THE STATE OF TEXAS


 




ON DIRECT APPEAL FROM


CAUSE NO. 944756 IN THE 351ST JUDICIAL DISTRICT COURT


HARRIS COUNTY








 Per curiam.

 




 The appellant was convicted in October 2004 of capital murder. (1) Based on the jury's answers
to the special issues set forth in Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the
trial judge sentenced the appellant to death. (2) Direct appeal to this Court is required. (3) After reviewing
the appellant's seven points of error, we find them to be without merit. Consequently, we affirm the trial
court's judgment and sentence of death.

 On April 2, 2003, Dashan Glaspie recruited his longtime friend, the appellant, and another
friend, Alfred Brown, to help him commit robbery at a check-cashing business. Glaspie was to act as a
lookout while the appellant and Brown went inside. They drove to the business the next morning. The
owner pulled up as the appellant and Brown were approaching. When the owner saw them, he pulled
out a handgun. The appellant and Brown returned to the car, and the three decided to abandon the
robbery because the owner had displayed a weapon.

 They decided to rob a different business and drove to a second check cashing location. When
Alfredia Jones arrived to open the store, the appellant approached her at gunpoint and walked her into
the store. Shortly thereafter Glaspie and Brown entered the store. The appellant allowed Jones to make
a phone call to another store to inform them that she was "opening Center 24." This was actually a
distress code alerting them to the robbery. The appellant held a gun to Jones's head and told her to
open the safe, while Glaspie began checking the store for surveillance equipment, and Brown went
through Jones's purse. Police Officer Charles Clark arrived at the scene and entered the store. The
appellant accused Jones of tipping off the police, and he shot her. The evidence suggested that Brown
shot Officer Clark. Jones and Clark both died as a result of the gunshot wounds. Pursuant to a thirty-year plea bargain, Glaspie testified for the State at the appellant's trial.

 In point of error four, the appellant claims Glaspie's testimony, as accomplice-witness
testimony, was not sufficiently corroborated to support the appellant's conviction as a principal. In his
fifth point of error, he contends Glaspie's testimony was insufficiently corroborated to support his
conviction under a parties theory. (4)

 Article 38.14 provides that a conviction cannot stand on accomplice testimony unless there is
other evidence tending to connect the defendant to the offense. The corroborating evidence under
38.14 need not be sufficient, standing alone, to prove beyond a reasonable doubt that a defendant
committed the offense. (5) All that is required is that there is some non-accomplice evidence tending to
connect the defendant to the offense. Further, there is no requirement that the non-accomplice
testimony corroborate the accused's connection to the specific element which raises the offense from
murder to capital murder. (6) There need be only some non-accomplice evidence tending to connect the
defendant to the crime, not to every element of the crime. (7) 

 Houston Police Officer James Binford testified that he interviewed the appellant, who 
confessed in detail about his involvement in the instant offense. The interview with Binford and another
officer was videotaped. The videotaped statement was played for the jury and admitted into evidence.
In the video, the appellant admitted to participating in the instant offense, but he denied shooting either
victim. The videotaped statement was sufficient to "tend to connect" him to the offense. (8) The
appellant's liability as a principal or under a parties theory is of no relevance under an Article 38.14
analysis. The question is whether some evidence "tends to connect" him to the crime; the connection
need not establish the exact nature of his involvement (as a principal or party). The appellant's
admission that he participated in the crime, although he denied being a shooter, is enough to tend to
connect him to the offense. Points of error four and five are overruled.

 In point of error one, the appellant claims the trial court erred in overruling his motion to dismiss
the indictment for its alleged failure to include the special punishment issues, (9) in violation of his right to
due process of law under the Fourteenth Amendment. The appellant contends that under Apprendi v.
New Jersey, (10) he was entitled to have the grand jury pass on the special punishment issues before
authorizing the State to proceed on a capital murder prosecution. 

 Since the Supreme Court decided Apprendi and its progeny, state courts have struggled with
whether sentencing factors, including the special punishment issues, should be considered full-blown
elements of an offense, requiring inclusion in an indictment. (11) Most courts, including this one, have held
that the Apprendi sentencing factors are not elements of offenses for purposes other than the Sixth
Amendment jury-trial guarantee. (12) We have specifically rejected the argument that Apprendi requires
the State to allege the special issues in the indictment. (13) Point of error one is overruled. 

 We have not examined whether a defendant has a right to a grand jury indictment on the special
punishment issues under the state constitution. The appellant alleges exactly this in his second point of
error. The appellant claims the trial court erred in overruling his motion to dismiss the indictment for its
alleged failure to include the special punishment issues, in violation of his state constitutional right to
indictment by grand jury. He contends the grand jury should be required to pass on the special issues
before the State is authorized to seek the death penalty. The appellant misquotes King v. State (14) to
support his position, as follows:

 At common law all offenses above the grade of misdemeanor must be prosecuted by
indictment, for which it was the policy of the common law that no man should be put to
death until the necessity therefor should first be determined by a grand jury. (15)


The appellant emphasizes that this is not a notice issue; rather, his argument is based on the historic role
of the grand jury to serve as a check on prosecutorial power.

 The actual language from King does not support the appellant's argument. In King, while 
discussing the historical basis for indictments at English common law, the Court quoted from Corpus
Juris Secundum ("C.J.S."), where it is noted that:

At common law all offenses above the grade of misdemeanor must be prosecuted by
indictment, for it was the policy of the common law that no man should be put on his
trial for felony, for which the punishment was death, until the necessity therefor
should first be determined by a grand jury on oath. (16) 


The appellant has reshaped the meaning of the reference that indictments were required for all felony
cases. The point being made by the Court about the common law was that indictments have historically
served as protection against arbitrary accusations by the government in serious criminal cases. (17) This
court has repeatedly recognized prosecutorial discretion to seek the death penalty, and the C.J.S.
excerpt in King does nothing to change this interpretation of state law. (18)

 Further, there is nothing in the language of the state constitution itself that requires the grand jury
to pass on special punishment issues. Article I, section 10, pertaining to the rights of an accused in
criminal cases, provides in part that the accused "shall have the right to demand the nature and cause of
the accusation against him, and to have a copy thereof" and that "no person shall be held to answer for
a criminal offense, unless on an indictment of a grand jury."

 Article V, Section 12(b) defines an indictment:

 An indictment is a written instrument presented to a court by a grand jury charging a
person with the commission of an offense. An information is a written instrument
presented to a court by an attorney for the State charging a person with the commission
of an offense. The practice and procedures relating to the use of indictments and
informations, including their contents, amendment, sufficiency, and requisites, are as
provided by law. The presentment of an indictment or information to a court invests the
court with jurisdiction of the cause.


Although indictments serve, in part, to "provide the accused an impartial body which can act as a
screen between the rights of the accused and the prosecuting power of the State," (19) this has never been
interpreted to mean that the grand jury screening function provided in the Texas Constitution pertains to
capital sentencing issues.

 In Studer v. State, (20) this Court concluded that, after constitutional amendments adopted in
1985, the "requisites of an indictment stem from statutory law alone now." Articles 21.02 and 21.03 set
forth the specific requisites for an indictment, and the Court has held that these provisions do not
require the State to plead the punishment special issues in a capital case. (21) Point of error two is
overruled.

 In his third point of error, the appellant claims the trial court erred in failing to grant his challenge
for cause against venireperson Patricia Bloom Wohlgemuth. The appellant contends Wohlgemuth was
challengeable for cause because she would not consider any mitigating evidence during punishment. The
appellant relies on an exchange between defense counsel and Wohlgemuth in which Wohlugemuth
stated that she would not consider several specific types of evidence named by defense counsel to be
mitigating, including: a difficult childhood, being orphaned at a young age, drug problems, or poor
schooling.

 A venireperson is not challengeable for cause on the ground that she does not consider a
particular type of evidence to be mitigating. (22) Indeed, a party is not entitled to question a venireperson
as to whether the venireperson could consider particular types of evidence to be mitigating. (23)
Wohlgemuth stated clearly in other portions of her voir dire that she was open to considering mitigating
evidence and would give the mitigation issue full and careful consideration. The trial court did not abuse
its discretion in denying the appellant's challenge for cause against Wohlgemuth. Point of error three is
overruled.

 In point of error six, the appellant claims the trial court erred in granting the State's motion to
prohibit him from arguing that co-defendant Glaspie's thirty-year, plea-bargained sentence was a
mitigating factor in assessing his punishment. Evidence was presented that Glaspie would receive a
thirty-year sentence if he testified truthfully in the appellant's trial. Before summation at the close of the
punishment phase, the court ruled that the appellant would not be allowed to argue that Glaspie's
sentence was a mitigating circumstance in his case. The appellant relies on Parker v. Dugger. (24)

 A co-defendant's conviction and punishment have no bearing on a defendant's own personal
moral culpability:

 [E]vidence of a co-defendant's conviction and punishment is not included among the
mitigating circumstances which a defendant has a right to present. In Evans v. State,
656 S.W.2d 65, 67 (Tex.Crim.App.1983), we stated:


 "We do not see how the conviction and punishment of a co-defendant
could mitigate appellant's culpability in the crime. Each defendant
should be judged by his own conduct and participation and by his own
circumstances." (25)

 

 The appellant's reliance on Parker is misplaced. In Parker, the United States Supreme Court
recognized that evidence of the co-defendants' sentences was part of the mitigating evidence admitted
at Parker's trial. But this evidence was admissible under Florida law. (26) The Supreme Court in Parker
recognized that this evidence was presented as mitigating evidence under Florida law; it did not address
whether exclusion of such evidence would be a violation of federal law or otherwise address any
rationale for inclusion of such evidence under federal law. (27) This Court has rejected the argument that
Parker compels consideration of punishments received by co-defendants, concluding that such
punishments "relate[] neither to appellant's character, nor to his record, nor to the circumstances of the
offense." (28) Point of error six is overruled.

 In his seventh point of error, the appellant claims the trial court erred by instructing the jury that
it could answer special issue two, "Yes," if they found that the appellant had merely anticipated that a
death would occur during the underlying robbery, in violation of his right against cruel and unusual
punishment. He contends the issue permitted a finding in favor of the death penalty without a finding
that he intended that a killing occur. He relies on Enmund v. Florida, (29) and Tison v. Arizona. (30) This
argument has been rejected in other cases, (31) and we are not persuaded to overrule that precedent.
Point of error seven is overruled.

 The judgment of the trial court is affirmed.


Delivered: October 3, 2007. 

Publish.
1. Penal Code § 19.03(a). 
2. Art. 37.071 § 2(g). Unless otherwise indicated, all references to Articles refer to the Code of Criminal
Procedure.
3. Art. 37.071 § 2(h).
4. The indictment alleged the appellant committed capital murder in either of two ways: (1) by causing the death
of Jones during the course of committing a robbery of Jones; or (2) by causing the deaths of Jones and Clark during the
same criminal transaction. The jury was authorized to convict the appellant under either paragraph, either as a principal
or under the law of parties.
5. Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). 
6. Vasquez v. State, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001). 
7. Id.
8. See Jackson v. State, 516 S.W.2d 167, 171 (Tex. Crim. App. 1974) (stating that defendant's admission or
confession is, under most circumstances, sufficient to corroborate accomplice testimony).
9. Pursuant to Article 37.071, upon a finding of capital murder, these questions must be submitted to the jury
if the State seeks the death penalty:


 (1) whether there is a probability that the defendant would commit criminal acts of violence
that would constitute a continuing threat to society; and

 (2) in cases in which the jury charge at the guilt or innocence stage permitted the jury to find
the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant
actually caused the death of the deceased or did not actually cause the death of the deceased but
intended to kill the deceased or another or anticipated that a human life would be taken.

 (c) The state must prove each issue submitted under Subsection (b) of this article beyond
a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue
submitted under Subsection (b) of this Article. 
10. 530 U.S. 466 (2000).
11. Kevin R. Reitz, Symposium: Sentencing: What's at Stake for States? Panel Two: Considerations at
Sentencing- What Factors are Relevant and Who Should Decide? The New Sentencing Conundrum: Policy and
Constitutional Law at Cross-Purposes, 105 Colum. L. Rev. 1082, 1093, note 42 (2005). 
12. Id., at note 42.
13. See Renteria v. State, 206 S.W.3d 689, 709 (Tex. Crim. App. 2006) (citing Russeau v. State, 171 S.W.3d 871,
886 (Tex. Crim. App. 2005), cert. denied, 126S. Ct. 2982 (2006), (Apprendi and Ring have no applicability to Article
37.071); Rayford v. State, 125 S.W.3d 521, 533 (Tex. Crim. App. 2003)).
14. 473 S.W.2d 43, 45 (Tex. Crim. App. 1971). 
15. Id. (alteration in original).
16. Id. (emphasis added).
17. Id. 
18. Cf. Russeau, 171 S.W.3d, at 887 (State's discretion to seek death penalty is not unconstitutional, citing
Hankins v. State, 132 S.W.3d 380, 387 (Tex. Crim. App. 2004), and Ladd v. State, 3 S.W.3d 547, 574 (Tex. Crim. App.1999)).

19. Teal v. State, 230 S.W.3d 172, 175 (Tex. Crim. App. 2007).
20. 799 S.W.2d 263, 272 (Tex. Crim. App. 1990).
21. Rosales v. State, 748 S.W.2d 451, 458 (Tex. Crim. App. 1987); Sharp v. State, 707 S.W.2d 611, 624 (Tex. Crim.
App. 1986). 
22. Standefer v. State, 59 S.W.3d 177, 181-82 (Tex. Crim. App. 2001); Rosales v. State, 4 S.W.3d 228, 233 (Tex.
Crim. App. 1999); Raby v. State, 970 S.W.2d 1, 3 (Tex. Crim. App. 1998). 
23. Rosales, 4 S.W.3d, at 233. 
24. 498 U.S. 308 (1991).
25. Morris v. State, 940 S.W.2d 610, 613 (Tex. Crim. App. 1996). 
26. See Boldender v. Singletary, 16 F.3d 1547, 1566 n.27 (11th Cir. 1994) (noting that under Florida law, disparate
treatment of co-defendants can constitute non-statutory mitigating circumstance where defendants are equally culpable).

27. See Morris, 940 S.W.2d at 613 (observing that the Court in Parker did not address whether evidence of
disparate sentencing is mitigating evidence which must be considered under Lockett v. Ohio, 438 U.S. 586 (1978)); see
also State v. Ward, 449 S.E.2d 709, 737 (N.C. 1994)("It did not address . . .or otherwise suggest that the exclusion of such
evidence was improper as a matter of federal law."). 
28. Morris, 940 S.W.2d, at 613. 
29. 458 U.S. 782 (1982).
30. 481 U.S. 137 (1987).
31. Ladd, 3 S.W.3d, at 573; Cantu v. State, 939 S.W.2d 627, 644-45 (Tex. Crim. App. 1997).