**Opinion issued February 28, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-11-00902-CR

————————————————

**RAMIRO MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1256679**

---

### MEMORANDUM OPINION

Appellant, Ramiro Martinez, was charged by indictment with capital murder.[1]  Appellant pleaded not guilty.  A jury found appellant guilty as charged.

---

[1]  *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 2011).

As the State did not seek the death penalty, the trial court sentenced appellant to life imprisonment. In three issues on appeal, appellant argues (1) there is insufficient non-accomplice evidence tending to connect him with the offense to corroborate the accomplice testimony and (2) the evidence is insufficient to establish his guilt beyond a reasonable doubt.

We affirm.

## Background

Shortly after midnight on July 1, 2009, Derrick Godfrey, complainant, was killed by a shot in the head with a shotgun in an area in Houston, Texas known as Cloverleaf. An initial investigation did not identify any suspects. No physical evidence implicated any particular person's involvement. A few months later, however, investigators with the Harris County Sheriff's Office identified appellant, Jonathan Rivera, and Jonathan Rodriguez as suspects in the case.

After multiple interviews with Harris County Sheriff's Office investigators, Rivera and Rodriguez admitted to their involvement in Godfrey's murder. Both acknowledged the other's involvement in the crime, and both also identified appellant as the shooter. Appellant, Rivera, and Rodriguez were charged with capital murder. Rivera was 14 at the time of the offense. Rodriguez and appellant were 16. All three were certified to stand trial as an adult.

2

Shortly before appellant's trial, the State entered into an agreement with Rivera and Rodriguez. In exchange for their truthful testimony at appellant's trial, the State reduced the charges against them to aggravated robbery. Rivera and Rodriguez pleaded guilty to the lesser offense and the determination of punishment would be later submitted to the trial court without an agreed recommendation.

At trial, Rivera testified that, on the evening of June 30, 2009, he had been at appellant's house with appellant, Rodriguez, and Israel Tanguma. Appellant lived in Cloverleaf, a short distance from where Godfrey was shot. That evening, the four boys were drinking liquor and smoking marijuana. They eventually ran out of one or both of those and decided to rob someone in order to buy more. Appellant obtained two shotguns and gave one to Rodriguez. Rivera somehow obtained a .38 revolver. Tanguma did not have a weapon.

The boys left the house and headed for a long grassy area, known as the "green mile," which ran along a series of dead end streets in the neighborhood. That area was preferred because it was not well lit, making it harder for anyone to identify them. After reaching the green mile, Tanguma left the group. As the boys were walking along the green mile, they saw Godfrey. Godfrey mistook them for friends of his, calling out, "Is that my nigger, T.Y.?" The boys played along, luring him to a darker area of the green mile.

3

When he reached them, Godfrey realized his mistake. Appellant pointed his shotgun at Godfrey and told him to get on the ground. Godfrey complied, getting onto his knees. Godfrey insisted he did not have anything. Rodriguez hit him with the back of his shotgun, and Godfrey fell to the ground. Appellant told Rivera to check his pockets. Rivera complied, finding $40. Appellant then told Rivera to leave. Rivera ran off in the direction from where they had come. When he was two blocks away, he heard a gunshot. Rivera ran to Tanguma's grandmother's house, which was also in the neighborhood. Rivera spent the night there.

The next day, the four boys spent the stolen money buying food from McDonald's and buying marijuana. At one point, Rivera asked appellant if he shot the man they robbed. Appellant told him the less he knew the better.

Rodriguez's testimony was similar. He agreed that the four boys had been together that evening, but denied smoking marijuana or drinking alcohol. For an unidentified reason, the boys decided to rob someone. Appellant produced weapons. Rivera had a handgun and Rodriguez and appellant had shotguns.

Appellant, Rivera, and Rodriguez walked to the green mile.[2] There, they saw Godfrey, who mistook one of them for a friend of his. When Godfrey reached them at the green mile and realized his mistake, appellant ordered Godfrey to get on the ground. Godfrey complied. Rodriguez searched one pocket while Rivera

---

[2] Rodriguez did not mention Tanguma or any involvement he may have had once they left appellant's house.

4

searched the other.  Rodriguez did not find any money and did not know whether Rivera found any.

Appellant told Rivera to run, and Rivera did.  Appellant then told Rodriguez in Spanish to back up because he was going to shoot Godfrey.  Rodriguez backed up and appellant shot Godfrey.  The two boys ran from the scene.  Rodriguez ran to Tanguma's grandmother's house to hide the shotgun, but he did not go inside the house.  He then ran to his home, a short distance from appellant's house.

Appellant did not testify at trial.  The State did, however, introduce a recorded interview between him and two investigators from the Houston Police Department around the time that he, Rivera, and Rodriguez were arrested.  In the interview, appellant admitted to being involved in a robbery with a man known as Rafael Leon.  Leon had died between the commission of the offense and the time of appellant's statement.  Officer A. Brown stated at the start of the interview that, before the interview was recorded, appellant had acknowledged his participation in the robbery.

> Brown: . . . you brought up the fact that you know and explained what kind of person Rafael was uh that uh y'all had done a robbery.
>
> [Appellant]: Yes sir.
>
> Brown: About three or four blocks from your house back in back sometime ago in the summer.
>
> [Appellant]: Yes sir.

Brown: . . . . And you mentioned to Sergeant Harris and us that um that and we actually know about this case we found it happened back on July 1, 2009 you explained it was a black guy that used to sling I guess dope.

[Appellant]: Yeah.

Appellant explained that Leon was carrying a shotgun. He admitted other people were involved in the robbery, but would not identify who they were. He said they were on the green mile when they saw someone else there, too. They ran up to the man, and Leon pointed the shotgun at him. Appellant searched the man, and when he was done, Leon told him to move back and then shot the man. Appellant then ran from the scene.

Also at trial, the State submitted into evidence a map drawn by appellant of where the robbery he described took place. It was in the same approximate area where Godfrey was killed.

### Sufficiency of the Evidence

In three issues, appellant argues (1) there is insufficient non-accomplice evidence tending to connect him with the offense to corroborate the accomplice testimony and (2) the evidence is insufficient to establish his guilt beyond a reasonable doubt.

### A.    Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge

6

as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Ervin*, 331 S.W.3d at 54. Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443

U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.  Analysis**

In his second issue, appellant argues that there was insufficient non-accomplice evidence to corroborate Rodriguez's and Rivera's testimony. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

"The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain

whether the remaining evidence tends to connect the defendant with the offense." *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). In conducting this sufficiency analysis, we disregard all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect appellant to the offense. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). The corroborating evidence under 38.14 need not be sufficient, standing alone, to prove beyond a reasonable doubt that the appellant committed the offense. *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). "All that is required is that there is *some* non-accomplice evidence *tending to connect* the defendant to the offense." *Id.* (emphasis in original).

The offense at issue in this appeal is capital murder. A person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 2011). For purposes of capital murder, murder means "intentionally or knowingly caus[ing] the death of an individual." *Id.* § 19.02(b)(1) (Vernon 2011). As it applies here, robbery means intentionally or knowingly threatening or placing another in fear of imminent bodily injury or death in the course of committing theft and with the intent to obtain or maintain control of the property. *Id.* § 29.02(a)(2) (Vernon 2011). Theft means "unlawfully appropriat[ing] property with intent to deprive the owner of property." *Id.* § 31.03(a) (Vernon 2011).

9

It is undisputed that Rodriguez and Rivera, who participated in the commission of the offense and who testified against appellant at trial, were accomplice witnesses. It is also undeniable that there is no physical evidence linking appellant to the commission of the offense. There is, however, corroborating evidence in the form of appellant's recorded interview. In his interview, appellant admitted being involved in the offense. He identified Leon as the shooter, but stated he was involved in searching the man they were robbing for money.

Appellant argues that nothing in his interview links him to the particular charged offense because he never stated the date of the offense; did not identify Rodriguez, Rivera, or even Tanguma in the commission of the offense; and did not identify Godfrey as the victim of the capital murder in which appellant was involved. We disagree that appellant failed to sufficiently identify his involvement in the commission of the crime for which he was charged.

At the start of the interview, Officer Brown explained that they were inquiring about a robbery and murder that occurred three or four blocks from his house, that occurred on July 1, 2009, and that was committed against a black man. Appellant acknowledged this and discussed his involvement in it. The fact that appellant did not specifically state the date of the offense or the race of the victim

10

does not change the fact that appellant acknowledged the event about which he was being interviewed.

Moreover, appellant specifically acknowledged the location of the offense, going so far as to draw a map of the location of the offense. Appellant's description of the location was the same location where Godfrey was killed. Additionally, while appellant did not specifically identify Rodriguez's and Rivera's involvement in the offense, he did state that people other than him and Leon were involved.

We hold appellant's police interview, which was admitted into evidence at trial, was sufficient to tend to connect appellant to the offense. Accordingly, his conviction could be based on Rodriguez's and Rivera's accomplice testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14.

We overrule appellant's second issue.

In his first issue, appellant argues the evidence is insufficient to establish his guilt beyond a reasonable doubt. We disagree.

The evidence at trial established that appellant went out of his house with Rodriguez and Rivera with the intent to rob someone. When they encountered Godfrey, appellant pointed a gun at him, ordered him to the ground, and told Rivera to search Godfrey. Rivera found $40. Appellant told Rivera to leave and then told Rodriguez to back up, explaining in Spanish that he intended to shoot

11

Godfrey. Rodriguez backed up and appellant shot Godfrey in the head, killing him instantly. In his statement to police, appellant acknowledged being involved in a robbery on the night in question, and drew a map identifying the correct location where Godfrey had been killed. Appellant also acknowledged that the person being robbed was killed during the robbery.

Under the law of parties, appellant is culpable for the theft of $40. *See* TEX. PENAL CODE ANN. § 31.03(a) (defining theft as "unlawfully appropriat[ing] property with intent to deprive the owner of property"); *id.* § 7.02(a)(2) (Vernon 2011) (holding a person "criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he . . . aids, or attempts to aid the other person to commit the offense"). By pointing a gun at Godfrey during the theft, appellant committed robbery. *See id.* § 29.02(a)(2) (defining robbery as intentionally or knowingly threatening or placing another in fear of imminent bodily injury or death in the course of committing theft and with the intent to obtain or maintain control of the property). By shooting Godfrey in the head with a shotgun and killing him as a result, appellant committed murder. *See id.* § 19.02(b)(1) (defining murder as "intentionally or knowingly caus[ing] the death of an individual"). By murdering Godfrey in the course of the robbery, appellant committed capital murder. *See id.*

12

§ 19.03(a)(2) (defining capital murder as intentionally committing murder in the course of committing or attempting to commit robbery).

We hold the evidence is sufficient to support the jury's determination that appellant was guilty of capital murder. We overrule appellant's first issue. Because we have held that the evidence is sufficient to support a determination that appellant murdered Godfrey, we do not need to consider whether the evidence is sufficient to support a determination that appellant murdered Godfrey under the law of parties or criminal conspiracy. *See* TEX. R. APP. P. 47.1 (requiring appellate courts to address every issue raised and necessary to final disposition of the appeal).

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).