

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-15-00360-CR

DARRELL CRAIG ADAMS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 21st District Court
Burleson County, Texas
Trial Court No. 14,530, Honorable Harold Towslee, Presiding

April 15, 2016

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Darrell Craig Adams, was charged by indictment with committing the offense of burglary of a habitation,[1] enhanced by two prior felony convictions.[2] The jury convicted appellant and, after hearing the punishment evidence, assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 95 years. Appellant appeals bringing forth two issues.

---

[1] *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011).

[2] *See id.* § 12.42(d) (West Supp. 2015).

First, appellant contends that the evidence was insufficient to corroborate the testimony of the accomplice witness. Second, appellant contends that the evidence is legally insufficient to support his conviction for burglary of a habitation. We will affirm.

Factual and Procedural Background

On November 6, 2013, Jimmy Charanza left his home in rural Burleson County to attend a funeral. When he arrived back at home around 2:00-2:30 in the afternoon, he found that his home had been broken into. According to Charanza, the items taken in the burglary were a gun safe and four guns, a gold retirement watch with his name inscribed on the back, another watch, two pool cues, and some country and western CDs and memorabilia.

The Burleson County Sheriff's Office investigated the burglary. The lead investigator was Gene Hermes. Hermes received a call from Roger Alexander on November 12, 2013. Alexander relayed to Hermes that the burglary was committed by himself, Josh Hall, and appellant. According to Alexander, Hall entered the home and dragged a gun safe out to the front porch. The safe was then loaded onto a pickup truck that had been borrowed from Rick Conrad. According to Alexander's testimony, the gun safe was taken back to appellant's house. After going back to appellant's house, appellant made a phone call to Walter White in an effort to secure a cutting torch to open the gun safe. When White advised that he did not have a cutting torch, appellant opened the gun safe with a hammer and a crow-bar. Four guns, two watches, pool cues, and some country and western CDs and memorabilia were found inside the safe. A day or so following the burglary, the guns were sold to J.D. Trout. However,

2

according to Alexander, appellant wanted to keep the gold watches, pool cues, and country and western memorabilia and CDs.

Based upon getting this information from Alexander, Hermes obtained a search warrant to search appellant's home.[3]  Upon executing the search warrant, the Burleson Sheriff's Office personnel located the engraved gold watch, two pool cues, and a Willie Nelson CD.  At trial, Charanza positively identified the gold watch and one of the pool cues.  Although he was less certain in his identification of the CD, he testified that it appeared to be one of the CDs he kept in the gun safe.

At the time of the search of appellant's home, officers found several prescription bottles in appellant's name, a utility bill in appellant's name, appellant's vehicle parked at the home, and all of appellant's dogs along with their food.

Hermes executed a second search warrant on the home of J.D. Trout.  All four of the firearms taken from the burglary were found there.

Appellant gave several statements to the authorities and, in each, he denied participating in any burglary.  Initially, he stated he did not even know Charanza.  However, later he admitted he might have met him.  Likewise, he initially denied ever being in a pickup truck with Alexander and Hall on the day of the burglary.  In a later statement, he revised this and said that the two men had picked him up while he was walking to get gas for his truck.

_____

[3] At the time of these incidents, appellant had entered into a contract to sell his home to Walter White.  However, by agreement with White and his wife, appellant had been allowed to move back into the home.

3

At the time of his initial statement, appellant voluntarily gave buccal swab samples of his saliva. These samples, along with the gold retirement watch, were sent to the Department of Public Safety (DPS) laboratory in Austin for DNA testing. The result of the testing was that multiple sources of DNA were identified on the watch. Robert Meade of the DPS laboratory testified that he could not say with 100% certainty that appellant had handled the gold watch, however, he was not excluded from the individuals who handled the watch.

At trial, appellant presented the testimony of Diane Conrad. She testified that, sometime around the incident in question, appellant had sold his home and was staying with her and her husband occasionally. On direct examination, Conrad testified that appellant "stayed in the house a little bit, not much because he had his four dogs and those were like his children." The testimony revealed that, some of the time, appellant stayed in a chicken coop out back of the Conrad home. Conrad further testified that, at times, appellant also stayed at his house.

Appellant then presented the testimony of Kelli Cox of Wal-Mart who testified about records showing that prescription drugs had been sold to appellant on the day of the burglary, November 6, 2013. All of the prescriptions were picked up at 3:30 on that day. On cross-examination, Cox admitted that the receipts simply show that appellant or his designee picked up the prescriptions.

Vanessa Dailey then testified for appellant. Her testimony was related to a visit to a physician that appellant made on the day of the burglary. According to the records

4

of Dailey's employer, HealthPoint, appellant began giving his history to a nurse at 1:57 p.m. on the 6th of November, 2013.

At the conclusion of the evidence, the trial court submitted its charge to the jury. The court's charge contained a paragraph concerning the law of parties and another paragraph identifying Alexander as an accomplice witness as a matter of law. The charge then had the appropriate requirement of corroboration for the jury to use the accomplice testimony to convict.

The jury subsequently found appellant guilty of burglary of a habitation. After receiving the punishment testimony, the jury found that appellant had been previously convicted of two prior felony offenses and sentenced him to confinement in the ID-TDCJ for 95 years.

Appellant appeals contending that the evidence is insufficient to properly corroborate the accomplice testimony of Alexander. Additionally, appellant contends that the evidence is insufficient to support the jury's guilty verdict. Disagreeing, we will affirm.

## Accomplice Witness

Appellant's first issue contends that the accomplice witness testimony of Alexander was not sufficiently corroborated. Alexander's status as an accomplice witness as a matter of law was recognized by all and, in fact, was found by the trial court's charge to the jury. So the question is did the State produce sufficient evidence to "tends to connect" appellant to the charged offense.

Standard of Review and Applicable Law

The Texas Code of Criminal Procedure sets forth the statutory requirement for corroboration of accomplice witness testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Article 38.14 provides as follows:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

In determining whether accomplice witness testimony is properly corroborated, we refer to the guidelines provided by the Texas Court of Criminal Appeals in *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). First, does the non-accomplice evidence tend to connect the appellant to commission of the crime? *Id.* The sufficiency of such non-accomplice evidence is determined on a case-by-case basis according to the facts of the particular case under review. *See id.* The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Id.* If there are conflicting views of the evidence—one that tends to connect the appellant to the offense and one that does not—we will defer to the factfinder's resolution of the evidence. *Id.*

Next, there needs to be only some non-accomplice evidence that tends to connect appellant to the crime, not to every element of the crime. *See Joubert v. State,* 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (per curiam). Another way the Texas Court of Criminal Appeals has described the "tends to connect" requirement is that "the evidence must simply link the accused in some way to the commission of the crime and

6

show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Simmons v. State,* 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) (quoting *Malone v. State,* 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). Additionally, all of the non-accomplice evidence is viewed together, rather than as isolated, unrelated activities to determine whether it tends to connect appellant to the offense. *See id.* at 511. Finally, if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of article 38.14 is met. *See Cathey v. State,* 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) (en banc).

Analysis

The first bit of corroborating evidence is the testimony of Walter White. Although White could not remember the exact date, he testified that sometime in early November 2013, appellant called him to ask if he might have a torch that appellant could use to get into a gun safe. White was certain it was appellant on the other end of the phone. This testimony puts appellant in possession of a gun safe near the time of the burglary.

Next, White testified that, sometime later, appellant came to the home of White's son-in-law while the family was having a bar-b-que and asked if White wanted to buy a gold watch or a pool cue. The pool cue was black with white lettering on it. One of the pool cues taken from the Charanza home was black with white lettering on it.

Additionally, when the search warrant was served on appellant's home, the Burleson Sheriff's Office found a gold watch with Charanza's name engraved on the back of it. They also found the pool cues and the country and western CDs that matched some of the items taken from the Charanza home.

Charanza positively identified the watch as being the retirement watch he kept in the gun safe. He, likewise, positively identified the pool cue recovered from appellant's home. Although Charanza was not positive about the Willie Nelson CD, he testified that it was just like one he had in his gun case.

The search warrant also produced evidence that appellant was living at the house searched. This evidence included the prescription drugs in appellant's name and the utility bill in appellant's name. This is important circumstantial evidence because of appellant's defensive theory that he did not live at that house. We defer to the jury's determination in this matter. *See Smith*, 332 S.W.3d at 442.

All in all, when we view this evidence collectively, the combined weight of said evidence tends to connect appellant to the offense. *See Cathey,* 992 S.W.2d at 462. The jury heard all of this evidence and was properly charged on the requirements of the accomplice witness rule. Even so, the jury found appellant guilty beyond a reasonable doubt. *See Smith*, 332 S.W.3d at 442. Appellant's first issue is overruled.

Sufficiency of the Evidence

Appellant next contends that the evidence is insufficient to support his conviction for burglary of a habitation.

Standard of Review and Applicable Law

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*

*v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

The sufficiency standard set forth in *Jackson* is measured against a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The "'law' as 'authorized by the indictment' must be the statutory elements of the offense" charged, "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

To prove the charge in the indictment, the State had to prove beyond a reasonable doubt that:

> 1. appellant
> 2. on or about November 6, 2013
> 3. in Burleson County, Texas
> 4. did intentionally and knowingly enter a habitation
> 5. without the effective consent of the owner, Jimmy Charanza
> 6. and attempted to commit or committed theft of property
> 7. to-wit: a gold watch, four firearms, and a metal gun safe.

In this case, the appellant's participation could be proved as either the principal actor or as a party to the crime. *See* TEX. PENAL CODE ANN. §§ 7.01, 7.02 (West 2011).

Analysis

The record provides evidence regarding each of the elements. Through the testimony of Alexander, we have evidence that, on the day in question in Burleson County, appellant acted as a lookout while Hall went inside the Charanza house. Hall later dragged a gun safe to the front porch of the house and the safe was loaded in a pickup truck belonging to one of appellant's and Alexander's acquaintances. The safe was taken to appellant's home. While the safe was at appellant's home, appellant called White and asked if he had a torch to cut open a gun safe. After being told no, appellant, according to Alexander, used a hammer and a small crowbar to force the gun safe open. A small crow-bar was found on the premises of appellant's home when the search warrant was issued.

A few days later, appellant appeared at the home of White's son-in-law and offered to sell a gold watch and a pool cue to White. When the search warrant was executed on appellant's home, a black pool cue and a gold watch with Charanza's

10

name engraved on the back of it was found. Additionally, evidence tending to connect appellant with the residence was found at the home, specifically, prescription drug containers with his name on them and a utility bill.

The DNA test on the gold watch could not exclude appellant as a donor of some of the DNA material on the back of the watch. In fact, the statistical probability of finding another white male with the DNA markers found on the watch other than appellant was 1 in 224.

Charanza identified the items seized at the time of the search warrant as belonging to him. He further stated that he had known appellant prior to the burglary, which contradicted a recorded statement of appellant wherein he denied knowing Charanza.

Although appellant produced testimony that around the time of the burglary he stayed at the Conrad home and had gone to the doctor and picked up prescriptions on the day of the burglary, the jury opted to believe the State's evidence. We cannot say that the jury acted irrationally when doing so for, at best, this evidence might be viewed as inconsistent with appellant's guilt, yet it was for the jury to resolve that inconsistency. *See Brooks*, 323 S.W.3d at 899.

At the end of the day, the State produced enough direct and circumstantial evidence to prove that appellant was guilty of the offense charged. The jury's verdict was not an irrational verdict. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. Appellant's contention to the contrary is overruled.

Conclusion

Having overruled each of appellant's contentions, the jury's finding of guilt is affirmed.

Mackey K. Hancock
Justice

Do not publish.