

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00341-CR

PABLO RODRIGUEZ GUZMAN JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 121st District Court
Terry County, Texas
Trial Court No. 6831, Honorable Kelly G. Moore, Presiding

August 1, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Pablo Rodriguez Guzman Jr., appeals his conviction for the offense of possession with intent to deliver a controlled substance listed in Penalty Group 1, in the amount of four grams or more but less than 200 grams,[1] enhanced by an allegation of one previous felony conviction.[2] The convicting jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice

---

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010).

[2] See TEX. PENAL CODE ANN. § 12.42(c)(1) (West Supp. 2015).

(ID-TDCJ) for a period of 15 years. Appellant has perfected his appeal and presents two issues for our consideration. First, appellant contends that the evidence was insufficient to support the jury's verdict because there was insufficient corroboration of the accomplice witness testimony. Second, appellant contends that the trial court committed charge error by failing to incorporate an application of the accomplice witness instruction within an application paragraph in the court's charge. Disagreeing with appellant's contentions, we will affirm.

## Factual and Procedural Background

On November 16, 2014, appellant and Isabelle Gamez were involved in a one-car rollover in Terry County, Texas. Department of Public Safety Trooper Pablo Ramos was dispatched to the scene of the accident. Prior to Ramos's arrival, first responders from the Wellman Volunteer Fire Department and the Brownfield Regional Medical Center (BRMC) arrived on the scene.

Appellant and Gamez were out of the vehicle when the first responders arrived on the scene. According to the witnesses, appellant was walking around the scene searching for his cell phone. The witnesses reported that appellant seemed to have little interest in Gamez's condition, but was overly focused on finding his cell phone. Appellant ultimately found his cell phone within 15 feet of where the methamphetamine was found in the median near the wreck.

Upon arrival at the scene, Ramos began working the scene as an automobile wreck. Appellant and Gamez had already been transported by emergency medical personnel to the BRMC by the time of Ramos's arrival on the scene. During his

2

accident investigation, he was shown two plastic bags of a white crystal substance that he believed to be methamphetamine. The two plastic bags of methamphetamine had been previously found by one of the volunteer fireman from Wellman who responded to the accident call. One of the bags was found near the front passenger tire of the wrecked vehicle. The second bag was found a few feet in front of the same vehicle. Ramos secured the bags and ultimately turned them over to the Department of Public Safety laboratory for testing.

Bobby Jones was the paramedic who was dispatched to the accident scene. Jones described appellant as being uncooperative with EMS personnel. Eventually, appellant and Gamez were transported to BRMC. During the drive to the hospital, Jones testified that he overheard appellant talking to Gamez in Spanish. Jones eventually asked that the two speak English so he could gauge Gamez's ability to respond. Jones testified that he overheard appellant telling Gamez not to say anything.

Upon arrival at BRMC, Saluna Ruiz, an ER tech, overheard appellant tell Gamez to "get your story straight." Ruiz further observed that appellant had two cell phones in his possession. Kristi Bruno, an ER nurse, also heard appellant tell Gamez to keep the story straight that they didn't know anything about what was at the scene.

While being treated at the emergency room, Gamez was found to possess cocaine and marijuana in her clothing. She was subsequently arrested for possession of these drugs and transported to the Terry County jail.

Ramos arrived at the hospital and questioned appellant about the accident. Eventually, appellant was charged with possession of methamphetamine and transported to the Terry County jail.

Upon arrival at the Terry County jail, appellant and Gamez were placed in separate holding cells. In addition to the aforementioned, also housed in the cells were Rosa Guzman and Roger Phergson. The four began having conversations with each other across the cells. All of the conversations were recorded on the jail's audio and video recording system. From the video and audio recordings, the following is seen and heard:

1. Appellant was trying to advise Gamez about what to say to the authorities regarding the methamphetamine.

2. Appellant told Gamez repeatedly to keep her story straight.

3. Appellant insisted that as long as they keep their story straight the authorities will not be able to charge them with the methamphetamine.

4. Appellant told Gamez that the methamphetamine could have been in the median for years.

5. Again, appellant told Gamez to keep her story straight "to the grave."

6. Appellant advised Gamez that if the authorities find the methamphetamine at least 25 feet from the vehicle, they can't prove possession.

The State called Darrell Walker, a DEA agent, who testified about his work history and experience as an investigator in drug related cases. He testified that the normal amount of methamphetamine trafficked to an individual user is in the 1/4 to one gram range. Walker further opined that the amount of methamphetamine found in this incident, 54 grams, was substantially more than would be typically found on a user for personal

4

consumption. Further, Walker opined that the amount involved in this incident would have a street value of approximately $5,400. Walker also explained that in his experience individuals dealing in drugs often carry more than one cell phone. He explained that one would generally be referred to as a "burner" phone, meaning that it was meant to be a disposable phone with prepaid minutes that could be discarded.

At the conclusion of the State's case, the appellant rested without calling any witnesses. Both sides closed and the case was submitted to the jury. After the close of the evidence, the trial court prepared its charge to the jury. In this case, the court's charge contained a paragraph concerning accomplice witness testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Appellant made no objections to the charge nor did appellant request any instructions.

After the jury heard the court's charge read to them and the final arguments of trial counsel, it began its deliberations. Thereafter, the jury returned a verdict finding appellant guilty of possession of methamphetamine with intent to deliver in an amount of four grams or more but less than 200 grams. After hearing the punishment evidence, the jury returned a verdict of 15 years' confinement in the ID-TDCJ.

Appellant has perfected his appeal and has brought forth two issues. First, appellant contends that the evidence was insufficient to support the jury's verdict because there was insufficient corroboration of the accomplice witness testimony. Second, appellant contends that the trial court committed charge error by failing to incorporate an application of the accomplice witness instruction within the application paragraph of the court's charge. We will affirm.

5

Accomplice Witness Testimony

Appellant's first issue contends that the accomplice witness testimony of Gamez was insufficiently corroborated under the accomplice witness rule. The trial court recognized that Gamez was an accomplice witness as a matter of law and so charged the jury. Accordingly, the question before the Court is whether there is sufficient corroboration of her testimony so as to sustain the verdict of guilty as found by the jury.

Standard of Review and Applicable Law

The Texas Code of Criminal Procedure sets forth the statutory requirement for corroboration of accomplice witness testimony. Article 38.14 provides as follows:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

*See* TEX. CODE CRIM. PROC. ANN. art. 38.14.

In determining whether accomplice witness testimony is properly corroborated, we refer to the guidelines provided by the Texas Court of Criminal Appeals in *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). First, we must decide whether the non-accomplice evidence tends to connect the appellant to commission of the crime. *Id.* The sufficiency of such non-accomplice evidence is determined on a case-by-case basis according to the facts of the particular case under review. *See id.* The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Id.* If there are conflicting views of the evidence—one that tends to connect

6

the appellant to the offense and one that does not—we will defer to the factfinder's resolution of the evidence. *Id.*

Next, there needs to be only some non-accomplice evidence that tends to connect appellant to the crime, not to every element of the crime. *See Joubert v. State,* 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (per curiam). Another way the Texas Court of Criminal Appeals has described the "tends to connect" requirement is that "the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Simmons v. State,* 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) (quoting *Malone v. State,* 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). Additionally, all of the non-accomplice evidence is viewed together, rather than as isolated, unrelated activities, to determine whether it tends to connect appellant to the offense. *See id.* at 511. Finally, if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of Article 38.14 is met. *See Cathey v. State,* 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) (en banc).

Analysis

In analyzing the evidence that tends to connect appellant to the methamphetamine found at the scene of the accident, we begin with appellant's actions on the night in question. When the members of the Wellman Volunteer Fire Department arrived on the scene, they found appellant walking around the scene of the accident seemingly more concerned with finding his cell phone than with any injuries that he or his passenger, Gamez, might have suffered. By itself, this seems to be a bit unusual

7

but not necessarily something that would connect appellant to the methamphetamine that was later found. However, when viewed from the totality of the circumstances, as described in the trial testimony, it takes on a different significance. Remembering Walker's testimony that individuals dealing in drugs often carry two cell phones, one of which is a "burner" phone over which he conducts his drug trade, appellant's preoccupation with finding the lost cell phone takes on a different complexion.

Next, the record contains evidence of appellant's efforts, during appellant's transportation to BRMC in the same ambulance with Gamez, to make sure that Gamez says nothing to the authorities. The subject matter about which appellant was instructing Gamez to say nothing becomes clearer later in the trial; from the evidence obtained from the jail audio and video recordings, the subject matter of the methamphetamine becomes clear.

Upon arrival at the BRMC, ER tech Ruiz, overheard appellant telling Gamez to get her story straight. Additionally, Ruiz noted that appellant had two cell phones in his possession. While appellant and Gamez were being treated in adjoining beds at the emergency room, Nurse Bruno overheard appellant tell Gamez to keep the story straight that they didn't know anything about what was at the scene. The item that appellant was urging Gamez to continue saying they did not know anything about is the methamphetamine located at the scene of the wreck. The record makes this abundantly clear, for the cocaine and marijuana was found on Gamez at the hospital. The only contraband found at the scene was the methamphetamine.

Then there are the various statements made by appellant directed toward Gamez while they were being held in the holding area of the Terry County jail. These were recorded by the jail audio and video recording equipment and were played for the jury. In these statements, appellant is heard coaching Gamez about what to say to the authorities and advising her that they will be fine, if she will keep her story straight. Later, he is heard referring to the methamphetamine in three different statements. First, appellant advises Gamez that the authorities will not be able to charge them with the methamphetamine if they keep their story straight. Then, appellant says that the methamphetamine could have been in the median for years. Finally, appellant tells Gamez that the authorities will not be able to charge them with the methamphetamine because it was 25 feet from the wreck. Interestingly enough, one of the methamphetamine bags was found approximately 20 feet or so from the wreck.

The testimony of DEA agent Walker also sheds some light on the case before the Court. From Walker's testimony, we learn that drug dealers normally have multiple cell phones. On the night in question, appellant was in possession of two cell phones.

All of this evidence leads to the conclusion that appellant knew about the methamphetamine located at the scene of the accident. Further, according to the testimony, Gamez passed out at the scene. She testified that she gave the methamphetamine to appellant. The logical conclusion is that appellant's continued reference at the jail to the methamphetamine could only make sense if he is the one that threw it away at the accident scene. Such a conclusion would be a rational conclusion on the part of the jury, and one to which we must defer. *See Smith*, 332 S.W.3d at 442. Remembering that we are instructed to view the non-accomplice

9

witness evidence collectively and not in isolation, we are left with the conclusion that this evidence tends to connect appellant to the methamphetamine in question. *See Simmons,* 282 S.W.3d at 508. It is the combined weight of this evidence that meets the requirement for evidence that tends to connect appellant to the offense for which he has been convicted. *See Cathey,* 992 S.W.2d 462. Accordingly, appellant's first issue is overruled.

Appellant's brief entered into a discussion of the law of parties. That is, under the posture of this case, a bit unusual. The State requested a charge on the law of parties and the trial court denied the request. Appellant's trial counsel neither joined the State's request nor did it object to the trial court's denial. Without any specific citation to cases or authority, appellant simply states that the law of parties affects the calculus on the sufficiency of the evidence. Whatever appellant's contention is regarding this procedural fact, he is in error. Appellant's liability as a principal or under a parties theory is of no relevance under an Article 38.14 analysis. *See Campos v. State,* 473 S.W.3d 907, 914 n.7 (Tex. App.—Amarillo 2015, no pet.) (citing *Joubert,* 235 S.W.3d at 731).

Appellant then entered into a discussion regarding the law of evidentiary sufficiency in drug cases. A review of this argument leads to the conclusion that appellant's argument is premised on the fact that there was insufficient corroboration of Gamez's accomplice witness testimony and, therefore, insufficient evidence to sustain the jury's verdict. However, we have held that her testimony was sufficiently corroborated. We need not further delve into this subject.

10

Accomplice Witness Charge

Appellant's second issue contends that the trial court committed reversible error because the trial court failed to apply the law of accomplice witness testimony to the facts of the case. This failure, according to appellant, resulted in egregious harm to appellant. The record reveals that the trial court gave a jury instruction regarding the use of accomplice witness testimony. At the charge conference, before submission of the charge to the jury, appellant did not object to the court's instruction regarding accomplice witness testimony.

Standard of Review

Appellate review of alleged jury charge error is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Initially, the reviewing court must determine if the charge was erroneous. *Id.* If we find that error occurred, we must then analyze the error for harm. *Id.* After we analyze the error for harm, we must review the record to determine whether appellant objected to the charge at issue. *See Middleton v. State,* 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc). The degree of harm necessary for reversal depends upon whether error was preserved. *Id.* (quoting *Hutch v. State,* 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (en banc)). If appellant properly objected to the charge, "the standard of harm is whether 'the error appearing from the record was calculated to injure the rights of [appellant]' which we have construed as 'some harm.'" *Celis v. State*, 416 S.W.3d 419, 423 n.3 (Tex. Crim. App. 2013) (quoting Article 36.19 and *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003) (per curiam)). "Conversely, unpreserved charge error warrants reversal only when the error

resulted in egregious harm." *Id.* (citing *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005) (en banc)).

Analysis

Our first task is to ascertain whether the jury charge given by the trial court was in error. *See Kirsch*, 357 S.W.3d at 649. Appellant contends that the trial court erred by "failing to apply the law to the facts." To properly analyze this issue, we set forth the applicable paragraph of the court's charge below.

> Upon the law of accomplice witness testimony, you are instructed that Isabelle Gamez was an accomplice, if any offense was committed, as alleged in the indictment. With this in mind, you are further instructed that you cannot convict the [appellant] upon Isabelle Gamez's testimony, unless you first believe that her testimony is true and shows the guilt of the [appellant] as charged in the indictment, and then you cannot convict the [appellant] unless Isabelle Gamez's testimony is corroborated by other evidence tending to connect the [appellant] with the offense charged. The corroboration is not sufficient if it merely shows the commission of an offense, you must believe beyond a reasonable doubt that the [appellant] is guilty of the offense charged against him.

The record reflects that the traditional application paragraph was the next paragraph in the court's charge.

Appellant relies on two cases that stand for the proposition that, if the trial court charges the jury on an accomplice witness issue, it should apply the law to the facts in the jury charge. *See Holladay v. State,* 709 S.W.2d 194, 198 (Tex. Crim. App. 1986); *Doyle v. State,* 133 S.W.2d 972, 972–73 (Tex. Crim. App. 1939). The first case cited by appellant, *Holladay*, makes a passing reference to applying the law to the facts when it stated, "In the past, when the provisions of Art. 38.14, supra, and it precursors, were

implicated in a case, the charge to the jury was held sufficient if it: (1) defined the term accomplice; (2) gave the statutory inhibition against conviction on uncorroborated accomplice testimony; (3) stated that the corroboration must be as to some material matter tending to connect the accused with the commission of the offense; and (4) applied the law to the facts."[3] *Hollady,* 709 S.W.2d at 198. In *Doyle*, the question was the failure of the trial court to instruct the jury that it must first believe the testimony of the accomplice to be true. *See Doyle,* 133 S.W.2d at 973. This, according to the appellant in *Doyle*, was the failure to apply the law to the facts of the case. *See id.* The *Doyle* court agreed, concluding that this failure—the failure to require the jury to find the testimony of the accomplice to be true—was the operative failure to apply the law to the facts of the case and, thus, error. *See id.*

In the case before the Court, the instruction given by the trial court is not simply the abstract rule from Article 38.14. *See* Tex. Code Crim. Proc. Ann. art. 38.14. It is an application of the law to the facts tailored to meet the evidence. Specifically, the jury was first instructed that Gamez was an accomplice witness as a matter of law as to the offense alleged in the indictment. Second, the jury was required to believe that her testimony was true. *See Doyle,* 133 S.W.2d at 973. Next, the jury was instructed that it had to believe that her testimony demonstrated guilt on the part of appellant. It was next instructed that it could not convict appellant unless Gamez's testimony was corroborated by other evidence tending to connect appellant to the offense charged. Additionally, the jury was told that corroboration is not sufficient if it merely shows that an offense had been committed; rather, that evidence must tend to connect appellant to

---

[3] The *Holladay* court advised that the materiality element was probably no longer required.

the commission of that offense. Finally, the jury was instructed that it had to believe beyond a reasonable doubt that appellant was guilty of the offense charged against him.

When broken down into its respective clauses, it is apparent to this Court that the charge given applied the law of accomplice witness to the facts of this case. *See Holladay,* 709 S.W.2d at 198; *Doyle,* 133 S.W.2d at 973. Accordingly, we find no error in the trial court's charge. Because we find no error in the trial court's charge, we overrule appellant's second issue.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


Mackey K. Hancock
Justice


Do not publish.